FRANCIS RIVAS and another *v.* WILLIAM HUNSTOCK and another.

Though the creditors of an estate, the property of which has been sold by order of court to pay their claims, are not, technically, warrantors of the purchaser, yet as their obligation to repay the price distributed among them depends on the eviction of the latter, their situation is analogous to that of a vendor, and they should be made parties to the action against the purchaser. The latter cannot be compelled to bring as many actions, in their different parishes, as there may be creditors liable to refund.

In an action against the purchaser of property sold under a *fieri facias*, the parties to the original suit may be cited in warranty. Having received the purchase money, if the consideration of the sale fail by the eviction of the purchaser, they will be bound to refund; and their liability must be regulated by arts. 2599 of the Civil Code, and 711 of the Code of Practice.

The creditors of an insolvent who has made a surrender, are not the owners of the property surrendered for their benefit. Their interest is the same as that of a plaintiff in property seized under a *fi. fa.* They cannot sell it without an order of the court before which the proceedings are pending; and the sale must be made like that of property seized under execution.

By the acceptance of the *cessio bonorum* by the judge for the benefit of the creditors, the property surrendered is vested in the latter so as to be no longer liable to seizure, attachment, or execution; but they acquire no real ownership in it. It is vested in them only to a certain extent, and for certain purposes. They cannot hold it in common, nor partition it in kind. It is in their hands only as a pledge, which they are bound to have sold in the manner pointed out by law, in order to divide the proceeds among themselves. The real ownership remains in the debtor, who may take it back on depositing in court a sum sufficient to pay his debts, and who, in case of sale, is

entitled to any balance in the hands of the syndic after the payment of his debts, as an ordinary debtor to any surplus in the hands of the sheriff after the satisfaction of the judgment under which his property has been sold.

By art. 2602 of the Civil Code, all the warranties to which private sales are subject, exist against the heirs in judicial sales of the property of successions. *Aliter* as to the creditors, on the sale of the property surrendered by an insolvent. The heirs are warrantors to the fullest extent, being owners and vendors, while the creditors are neither. The latter are only responsible, severally, for the restitution of the proceeds of the sale of the property received by them.

The omission by a purchaser, to notify his vendor, or those who are responsible to him in case of eviction, of the action instituted against him, will not, under arts. 2494 of the Civil Code, and 388 of the Code of Practice, release the latter, unless they can show that they had means to defeat the action, which were not used owing to their not having been cited in warranty, or apprized of the institution of the suit. By the word *means* in art. 2494 of the Civil Code, must be understood new facts, or peremptory exceptions, which, if presented to the court, would have produced a different result. It will not be sufficient to show that there was error in the judgment, for the same judgment would have been pronounced against them, had they been cited.

Where the defendant in a petitory action has established the value of the improvements made by him on the premises, and plaintiff seeks, under art. 500 of the Civil Code, which gives to the owner of the soil on which plantations or constructions have been made by a third person, the election either to reimburse the value of the materials and the price of workmanship, or to pay a sum equal to the enhanced value of the soil, to avail himself of the privilege by paying the enhanced value, he must show the amount of such enhanced value.

THIS was an action before the District Court of East Baton Rouge, by Francis and Zenon Rivas, to recover two-thirds of a tract of land about nine miles below the town of Baton Rouge, of from twelve to thirteen *arpens* front on the Mississippi river, which they allege originally belonged to their grandfather, and on the partition of his estate fell to the share of their father, by whose death it descended to them, in common with their sister, *Virginia Rivas.* They prayed that they might be declared to be the lawful owners of two-thirds of the tract, that they might have possession thereof, for damages, and for the rents and profits during the adverse possession of the defendant. The action was commenced against Hunstock, who alleged, that he was in possession as the tenant of Bernard. The latter was made a party, and answered that he was the owner of the tract of land mentioned in the petition, having purchased it at a public sale made by the syndic of the creditors of the late Marie Rivas, the mother of the plaintiffs, for the

sum of $9100. That the sale was made under an order of a competent tribunal, conformably to law, and that the price was paid by him to the syndic. That, at the death of the plaintiffs' father, his succession was encumbered with a large amount of community debts. That the tract of land in question belonged to the community, and was legally adjudicated to his widow, the mother of the plaintiffs. That long after this adjudication, finding herself unable to pay the community debts created by her husband, she surrendered to the creditors of the community and to her own creditors, all her property, including this land. That the land, with the other property ceded, was regularly sold, for the payment, of the community debts for which it was liable. That after the sale, and before the tableau of distribution was filed, the mother of the plaintiffs died. That the plaintiffs became, subsequently, parties to the tableau presented by the syndic, and opposed it, and received their respective shares of the proceeds of the sale. That, as heirs, they took possession and disposed of the effects left at the death of their mother, and thereby became bound, as warrantors of Bernard's title. Bernard further averred that he had erected improvements on the land to the value of $5000 ; and prayed, in case judgment should be rendered in favor of the plaintiffs, that they might be compelled to refund the price paid by him and the value of his improvements ; and that the sister and co-heir, Virginia Rivas, and the creditors of Marie Rivas, the mother, who were placed on the tableau of distribution, may be cited in warranty, and condemned in such judgment as may be rendered against him. The judge *a quo* refused to allow the heirs and creditors to be cited in warranty, to which the defendant, Bernard, excepted. A judgment rendered in favor of the defendant by *Morgan*, J., was reversed in the Supreme Court, (13 La. 159.) The two-thirds of the tract claimed in the petition were decreed to belong to the plaintiffs ; and the court below ordered to make a partition thereof according to law, to ascertain the value of the improvements made by the defendant, and the amount of his claim against the parties cited in warranty. From the judgment of the District Court, rendered in pursuance of this order, by *Johnson*, J., the defendant, Bernard, and the parties cited in warranty, have appealed.

MORPHY, J.   This was a petitory action decided by this court in favor of the plaintiffs, in March, 1839.   The report of the case contains a full statement of all the pleadings and facts relative to the question of title.   13 La. 172.   That judgment decrees to the petitioners two undivided thirds of the tract of land described in their petition, and in the defendant Bernard's possession, and remands the case to the District Court "to make a partition thereof according to law, and to ascertain and establish the value of the improvements made by Bernard on the premises, and *his claim against the parties called in warranty.*"   It provides, further, that no writ of possession shall be issued in the case, until the plaintiffs shall have paid to Bernard the value of his improvements, &c.   When the case was first before the inferior court, the defendant, Bernard, believing that an order was necessary to call in warranty the creditors of Marie Rivas, at the sale of whose estate he had purchased the land, moved for citations to be issued to them, and for time to be allowed to them to appear and answer, which the court refused, being of opinion that the creditors could not be cited in warranty, they being only liable (if at all,) for the restitution of the price of the property.   To this decision Bernard took a bill of exceptions, which appears to have been overlooked by this court, or at least not adverted to in its opinion.   On the return of the case to the District Court, the judge, under the decree of this tribunal, thought it his duty to order citations to be issued to the creditors.   The latter appeared, and excepted to the call in warranty, and their objections being overruled, they took a bill of exceptions.   In their answer to the merits, the creditors pleaded the general issue; averred that, if liable at all, they were bound only for the restitution of so much of the price of the land sold to Bernard as they severally received; but that, in consequence of his neglect to have them cited in warranty, anterior to the rendition of the final judgment in the case, they are released from all liability to him, because, had they been cited, they could have made a successful defence.   But should they be considered in any way liable, they deny the allegations of the plaintiffs, and contend that the property claimed in this suit really belonged to the community existing between the father and mother of the plaintiffs, was lawfully adjudicated to Marie Rivas at the price of

the inventory, was surrendered by her to her creditors, sold by the order of a competent court for the purpose of paying the debts of the community as well as her own, and that this sale cannot be attacked except by a direct action of nullity; that the plaintiffs' father left an estate encumbered with debts, which were paid with the proceeds of the land claimed, and that the plaintiffs cannot recover until they first pay the amount of such debts, to wit, $8439 79, and a further sum of $3144 42 received by them, being two-thirds of the funds remaining in the hands of the syndic of their mother's estate arising from the sale of all the surrendered property, including the price of the land in dispute, after paying all her debts and those of Francis Rivas her husband. They aver that the plaintiffs have taken possession and disposed of the estate of their mother, (acquired after her surrender,) and have thereby made themselves her unconditional heirs, and cannot institute this action, being bound to fulfil her obligations of warranty towards the defendant Bernard. Should they be held liable as warrantors, the creditors pray that it may be decreed that Bernard is vested with a good and legal title; and that if the plaintiffs be entitled to the land, they shall not have possession until they pay the aforesaid sums of money. By an amended answer, the defendant Bernard prayed that the plaintiffs might be cited in reconvention, and decreed to pay him $10,000 for the two-thirds of the improvements made by him on the land; and the further sum of $3144 42 received by them from the syndic of the creditors of their mother, Marie Rivas, out of the price paid by him for the land he had purchased.

There was a judgment below decreeing to the defendant Bernard the sum of $2133 33⅓ for the value of his improvements on the land after deducting the rents allowed to the plaintiffs, and the further sum of $3144 42, to be paid to him by the plaintiffs as part of the $6666 66—the two-thirds of the price paid for the land— the balance of which, to wit, $3522 34, the creditors called in warranty, were decreed to pay *pro rata.* The judgment further decrees a partition of the land to be made, &c.

*Elam,* for the plaintiffs, urged that the judgment was erroneous so far as it condemned them to pay Bernard any thing on account

of the improvements, and in allowing him $3144 32, as part of the price of the land.

*R. N. Ogden* and *Mazureau*, contra. The property in dispute belonged to the community of *acquêts* between Rivas, the father, and his wife, the mother of the plaintiffs, and was legally adjudicated to her. By her cession and the sale, it became the property of Bernard. Code of 1808, p. 344, art. 1. Civ. Code, arts. 338, 2374, 2414. *Harty et al.* v. *Harty et al.*, 8 Mart. N. S. 518. 18 La. 361. Bernard having acquired the land at a sale under the orders of a competent tribunal, and having paid the price, has acquired a title which can only be contested in an action of nullity. *Dussuau's Syndics* v. *Bredeaux*, 4 Mart. 450. *Mayfield* v. *Comeau*, 7 Mart. N. S. 180. *Childress* v. *Allen*, 3 La. 477. By appearing and contesting thet ableau of distribution, with the view of causing themselves to be placed on it for a larger amount than the syndic had stated to be due, the plaintiffs have acknowledged the validity of the proceedings in the surrender, and are bound thereby. See cases cited above from 4 Mart. 450. 7 Ib. N. S. 180. *Chesneau's Heirs* v. *Sadler*, 10 Mart. 726. *Hunt's Heirs* v. *Lefebre et al.*, 6 La. 601. *Grounx et al.* v. *Abat's Executors*, 7 Ib. 17. *Blount* v. *Syms*, 12 Ib. 173. Plaintiffs accepted the succession of their mother purely and simply. Civ. Code, arts. 876, 878, 982, 986, 988, 993, 1003, 1006, 1007. As her heirs they are estopped by her warranty. Civ. Code, arts. 876, 934-936, 1007. *Vienne* v. *Bossier*, 10 Mart. 359. *Colton* v. *Cullen*, 2 La. 371. *Guerin's Heirs* v. *Bagneries*, 18 La. 590. Should the plaintiffs be entitled to recover the land, there must be judgment against them for the amount of the debts of their father paid from the proceeds of the sale, and for the sums severally received by them from the syndic. As to the liability of the creditors cited in warranty, see Civil Code, art. 2599. Code of Pract. art. 711.

MORPHY, J. The first question to be examined is that presented by the bill of exceptions, taken by the creditors in relation to the call in warranty made on them by the defendant Bernard. It has been urged by the counsel of the latter that, by sending the cause back to be tried contradictorily with the creditors on his claim against them, the judgment of this court has virtually decid-

ed that they were to be cited in warranty in this suit as prayed for ; while, on the part of the creditors, it is said that the first bill of exceptions was entirely overlooked, because the attention of the court was not called to it in the points made by the defendant Bernard. Be this as it may, we are of opinion that, although the creditors of an estate, the property of which has been sold under the order of a court to pay their claims, are not, technically speaking, warrantors, yet as their obligation to repay the price distributed among them depends on the eviction of the purchaser, they stand in a situation analagous to that of a vendor, and should be made parties to the suit brought against the purchaser. The recourse of the latter would be difficult indeed, if, to obtain reimbursement, he was to be driven to the trouble and expense of bringing as many suits, in different parishes, as there may be creditors liable to refund the proceeds of the property. The creditors them-selves complain with bad grace that they were afforded an opportunity of uniting their efforts with those of the vendee, to defeat an action by which they are to be so materially affected. In *Guerin* v. *Bagneries*, 13 La. 17, we held, that the parties to a suit in which a *fi. fa.* has issued, under which property has been sold, could be brought into court to defend the purchaser by a citation in warranty. The creditors, at whose suit surrendered property is sold, appear to us to occupy much the same position as the plaintiff in a *fi. fa.*; they are not properly vendors, yet as they receive the purchase money, if the consideration of the sale fail by the eviction of the purchaser, they are, like him, bound to refund it. This obligation renders them warrantors to a certain extent, and no good reason is perceived why they should not also be brought in by citation in warranty—a convenient proceeding, equally advantageous to all parties. As to their liability to the defendant, we are clearly of opinion that it must be regulated by article 2599 of the Civil Code, and article 711 of the Code of Practice. Where property has been surrendered by a debtor, his creditors have no more the ownership of it than if it had been seized under a *fi. fa.* They cannot sell it without an order of the court in which the proceedings are pending, and this sale, according to article 2180 of the Code, must be made like that of property seized under execution. A subsequent enactment has given

to the creditors the privilege of fixing the terms on which the sale is to be made ; but the same formalities must be pursued as in the case of a *fi. fa.* Article 2602 of the Code, to which we have been referred, provides that all the warranties to which private sales are subject, exist against the heirs in judicial sales of the property of successions. It is urged that the same responsibility should attach against the creditors on the sale of an insolvent estate ; but the reason on which the liability of the former rests, does not apply to the latter. The heirs are warrantors in the legal acceptation of the term, and to the fullest extent, because they are owners and vendors, while the creditors, at whose suit a sale is made, are neither. But it is insisted, that, as under the statute of 1826, all the property of the insolvent is vested in his creditors, they become the owners of it, and should be placed on the same footing as the heirs. On an attentive examination of the whole statute it will be found that, although by the acceptance of the *cessio bonorum* made by the judge for the benefit of the creditors, the property is vested in the latter, so as to be no longer liable to seizure, attachment, or execution, the creditors acquire no real right of ownership or dominion over it. The property vests only to a certain extent, and for certain purposes ; they cannot hold it in common, nor partition it in kind ; it is in their hands only as a pledge which they are bound to have sold in the manner pointed out by law to divide the proceeds among themselves, but the real ownership yet remains in the debtor, who can take back all his property on depositing in court a sum sufficient to cover all his debts, and who, in case of a sale, is entitled to the balance remaining in the hands of the syndic after the payment of his debts, in the same way as a debtor is entitled to any surplus in the hands of the sheriff, after satisfying the judgment under which his property has been sold. 2 Moreau's Dig. 437, sects. 2 and 9. Civ. Code, arts. 2171, 2174, 2175, 2176–2178. We, therefore, conclude that the creditors are not liable to a full warranty as vendors, and can only be held responsible for the restitution of the proceeds of the sale of the property severally received by them. 6 La. 738. But the creditors contend that the defendant Bernard has lost even this limited recourse against them, by his neglect to have them cited in warranty before the rendition of the final judgment in this court.

Rivas and another v Hunstock and another.

They aver that had they been cited in time, they could have made a successful defence; that had Bernard properly urged his bill of exceptions, no final judgment could have been rendered had this court considered them as warrantors, but that the whole case must have been sent back; that, at all events, he should have prayed for a re-hearing, and have called upon the court to express an opinion on his call in warranty, and to remand the case to be tried contradictorily with them. They further contend, that if they are now in any way bound to answer the defendant's call on them, the whole case should be considered as open; and that, should they show a good defence, it must avail the defendant Bernard, notwithstanding the judgment obtained by the plaintiffs, which is said to have been irregularly rendered.

In support of this last position, Bernard and the creditors have united their efforts, and pressed it with great zeal and earnestness. They succeeded, it appears, in convincing the judge of the first instance, that the whole case should be opened, even with regard to the question of title. After hearing all the parties as if the case was submitted to him for the first time, he has reviewed the matters passed upon by this court, and has been pleased to declare that the decision made on them appeared to him to be in conformity with law and the rights of the parties; from which we are to infer, that, had he thought differently, he would have believed himself authorized to give his judgment in opposition to that decision. How the counsel or the judge could have persuaded themselves that a final judgment of this court, which had become the property of the party obtaining it, could be thus disregarded and set at naught, is difficult to understand. The case was not remanded for a new trial on the main issue between the plaintiffs and the defendant Bernard, but, among other objects, to settle the claims of the latter against the parties responsible to him. The fact of these parties not having been cited in warranty, whether owing to the neglect of Bernard or not, might, indeed, release them from their liability, but could surely give them no right to disturb the final judgment rendered in the case before they were called in. They are bound by such judgment, and liable to Bernard, unless they can show that they had it in their power to defeat the plaintiffs' action by means of defences, which were not used, owing to

the failure to call them in, or to apprize them of the institution of the suit; but in no case could the final judgment, as regards the question of title, be reviewed, or treated as a nullity on that account. Code Pract. art. 388. Civ. Code, art. 2494. We have, then, only to examine whether Bernard has lost his recourse against the creditors for reimbursement. If he has, it must be because the latter *had means of defeating the plaintiffs' action,* which were not used by him. By the term *means,* in the article above cited from the Code of Practice, we understand new facts put on record, or a peremptory exception, which, if presented to the court, must have produced a different result. The word *proofs,* which is the expression to be found in the corresponding article of the Civil Code, article 2494, agrees with the meaning we give to the article of the Code of Practice. We have, therefore, most attentively compared the evidence and pleadings in the two records in this suit, and have not discovered in the last suit any material fact or plea not to be found in the first. Whether, on the same evidence and pleadings, and after the able argument we have had the benefit of, the court, as at present composed, would have come to the same conclusion as this court did on the former trial, in relation to the plaintiffs' right to recover, it is unnecessary for us to say; but had the warrantors even succeeded in convincing us that there was error in the judgment rendered in the case, it could not have availed them. Relying on the maxim, *res judicata pro veritate habetur,* Troplong remarks, in relation to the failure to call in the vendor: "*mais si l'acheteur n'avait pas appelé le vendeur, et si celui-ci ne prouvait pas qu'il avait des moyens suffisans de faire rejeter la demande, il ne servirait de rien de dire et même d'établir que les juges se sont trompés.*" "*La magistrature est un pouvoir public auquel on est forcé de recourir pour avoir justice. L'acheteur s'est défendu devant elle; il a résisté comme il le devait; s'il est condamné, même par erreur, il doit avoir son recours contre son vendeur à qui le jugement est opposable. Le vendeur aurait été de même, s'il eut été en cause.*" Vente, v. 1, No. 424. The creditors have not, in our opinion, shown that they had any means of defeating the plaintiffs' action, which have not been relied on by the defendant Bernard. They are, therefore, liable to reimburse to him the price he has paid, so far as they have received it.

It has, finally, been contended by the creditors, that the plaintiffs must be decreed to pay the amount of the debts of their father, paid out of the proceeds of the sale of the land which they now claim as his heirs, and to refund the sums they have received from the syndic of their mother's estate. The improper and illegal adjudication made to Marie Rivas of all the property left by her husband, and supposed to belong to the community of *acquets*, without previously paying the community debts, has created much difficulty and confusion as to the rights and liabilities of the plaintiffs and their true position in relation to the estate of their mother; it has, moreover, been extremely prejudicial to them. From the situation of the estate of Francis Rivas, at the time of his death, it is very probable, had a regular settlement of it been then made, that the community property would have nearly sufficed to pay off all the community debts; and his heirs might have kept the land in question, or, if compelled to sell it to pay the debts of their father, they would have had a large surplus of its proceeds. But an adjudication of the whole succession, unliquidated, having been made to their mother, she contracted debts of her own, without discharging those she had assumed, and some time after made a surrender of the whole property to her creditors. No liquidation of the community having been made, the claim of Rivas' children against their mother in consequence of the adjudication, was uncertain, and necessarily subordinate to the payment of the debts of their father. These debts were afterwards mingled with those contracted by his wife on her own account, and were paid off indiscriminately by the syndic out of the proceeds of all the property sold, together with the heavy charges incidental to the settlement of a surrendered estate, thus leaving as a balance due to the three children of F. Rivas only a sum of $4716 63. Of this balance the plaintiffs have received their portion, amounting to $3144 42, in the purchase of property at the sale made by the syndic. The land, the two undivided thirds of which have been decreed to belong to the plaintiffs, sold for $9100, which sum, with the proceeds of the other property surrendered, was applied to the payment of the debts of their father as well as of their mother. This circumstance renders it impossible for us to regulate and determine the liability of the plaintiffs for the debts of

Rivas and another v. Hunstock and another.

their father towards the creditors of the community, who have been decreed to refund to the defendant Bernard a part of what they have received. We cannot say what portion of the price of the land was applied to the payment of the community debts. It will be for these creditors to establish, hereafter, against the plaintiffs, their claims in this respect, if any they have. The record does not enable us to pronounce upon them; but it is worthy of remark that the property sold by the syndic, independently of the land sued for, brought the sum of $9317, which was more than sufficient to pay the debts of the plaintiffs' father, had they not been mingled with those of their mother and the charges for the settlement of her estate. As to the sum of $3144 42, which they received as creditors of the estate of their mother, out of the balance in the hands of the syndic, it is clear that the plaintiffs are bound to refund it. Having claimed as their own, by inheritance from their father, two-thirds of the land which had been sold as community property, and which brought $9100, they cannot, at the same time, take the land, and continue to keep this sum which may be considered as a part of its proceeds. Had the syndic not received the price of this land as a part of the assets of the community, there would have been no balance due to the plaintiffs as creditors of their mother, in consequence of the adjudication made to her. But the counsel for the plaintiffs have contended that, if liable to refund, they are to pay back this money to the creditors, and not to the defendant Bernard, between whom and them there is no privity of contract. Admitting this to be true, the money returned to the creditors, would have to be paid by them to the defendant Bernard, who claims at their hands the reimbursement of the price paid for the property. All these parties being before the court, the judge, to avoid a circuity of actions, properly decreed the plaintiffs to refund this amount directly to Bernard, whose recourse against the creditors is thereby reduced, as follows :

The price paid by Bernard, was    -    -    -    $9100
Two-thirds of which are to be reimbursed to him, say,  6666 66
From which deducting    -    -    -    -    -    3144 42

There remains only a sum of -    -    -    -    $3522 24

which the judgment appealed from has apportioned among the creditors called in warranty, according to the amounts respectively received by each of them.

Having thus disposed of the several questions connected with the call in warranty for the reimbursement of the price, we shall proceed to consider the other matters, for the adjustment of which the case was remanded. On the trial the plaintiffs offered evidence to prove the value of the rents and profits of the land, since the service of the citation on the defendant Bernard. This was objected to, on the ground that the decree of this court, being silent as to the fruits or rents claimed by the plaintiffs, had disallowed them. It is clear that the naked question of title was alone decided, and that all other matters were left open to be settled on the remanding of the case. The omission of this court to mention the rents or fruits, among the respective claims of the parties growing out of the eviction, should not deprive the plaintiffs of them, as they were claimed in the petition, and have clearly not been passed upon. Civ. Code, 3416. 8 Mart. N. S. 620. 2 La. 173.

In relation to the improvements, the evidence shows that Bernard expen ted $1000 on the sugar mill in putting up a cane carrier, and thoroughly repairing it, and that he built a few cabins, and cleared, ditched, and fenced between seventy and eighty acres of the land. It is contended by the plaintiffs' counsel that the repairs to the sugar mill did not enhance its value, and must be considered to have been necessary to preserve it in a state of usefulness ; and that the wood on the land cleared, was worth as much as the labor of clearing it. The repairs to the sugar mill were a useful improvement, and certainly enhanced its value if they prevented it from becoming altogether useless. As to the clearing of the land, several witnesses, it is true, say that on well timbered land situated on the river Mississippi, the wood, if good, is worth the clearing ; but they do not speak in relation to this land, nor does the evidence show it to have been well timbered, nor the wood growing on it to have been of good quality. The witnesses tell as, moreover, that Bernard keeps no wood yard, and that he is not in the habit of selling wood ; and they all agree that the clearing of lands greatly enhances their value. To the plaintiffs,

then, the clearing is an improvement for which they must pay ; but they insist that, if liable, they are to pay only a sum equal to the enhanced value of the soil, and that there is no evidence showing the amount of such enhanced value.    Article 500 of the Civ. Code, gives to the owner who procures the eviction, the election whether he will pay the value of the materials and the price of workmanship, or a sum equal to the enhanced value of the soil ; but, we apprehend, that if the owner wishes to avail himself of this privilege, it behooves him to show that the enhanced value of the soil is inferior to the amount expended for the improvements. The proof in relation to the value of the improvements is contradictory.    One witness estimates the clearing, ditching, and fencing, to be worth from $45 to $55 per *arpent ;* another from $55 to $60 ; and a third from $60 to $80.    The judge below allowed $60.    As all these valuations appear to us excessive, we must adopt the lowest. · Even that is extremely liberal, when it is considered that Bernard has had the use of the wood ; and it is shown that on more than one half of the land cleared, the wood had been *girdled* by Francis Rivas before the purchase.    The whole clearing would then amount to $3150, which sum, added to the $1000 expended on the sugar mill, makes $4150, for two-thirds of which the plaintiffs are liable.    No evidence, whatever, has been given of the value of the few cabins built by Bernard.

It is, therefore, ordered that the judgment of the District Court be so amended as to allow to the defendant Bernard, only a sum of $1433 34, instead of $2133 33, for the balance due for improvements put on the land after deducting the value of rents due by him ; this sum to be paid as provided for in the said judgment, which is hereby affirmed in all other respects.    The costs of this appeal to be borne by the appellants.